## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | No. 1:15-CR-193 |
| | ) | |
| v. | ) | (Judge Kane) |
| | ) | |
| **JAY EUGENE REED** | ) | |
| | ) | |
| | ) | (Electronically Filed) |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Jay Reed is a child rapist. He raped – anally raped, vaginally raped and orally raped – little girls as young as 9 years old to age 13 years old. On May 4, 2018, Reed pleaded guilty to 3 counts of rape in the Court of Common Pleas in Huntingdon County at docket numbers 349-CR-2015 and 372-CR-2015 involving the victims in this matter.

Reed is producer of child pornography. Reed photographed the genitals of the little girls he raped or molested, manipulating these young girls by buying them gifts and giving them money and threatening to stop the gift giving if she refused to allow him to perform these vile acts on her. The FBI located 200 images of child pornography, which depict the lascivious display of the genitals of JV1,

JV2 and JV4, on Reed's electronic devices.  In these images, which Reed took himself, these little girls are naked with their legs spread apart. There are a number of images where Reed's hands and fingers are visible touching the girls' vaginas.  In some of the images, Reed had placed a temporary tattoo of cherries in some images and a butterfly in other images near the vagina of the girl before taking the photo.  When searching where Reed lived prior to his arrest, law enforcement also seized strawberry flavored lube and a book entitled "Child Psychology" with certain passages relating to "sexual exploration with children" highlighted within the book.  A photo of the book cover seized from Reed's possessions is below.



In addition to his manipulation and rape of the victims here in the Middle District of Pennsylvania, Reed also collected pornographic images of children from the internet.  His collection of child pornography included approximately 300 images and one video of children being sexually abused, including prepubescent minors performing sex acts, and children in bondage, being urinated on and oral and anal penetration by adults.

Defendant states "[t]he instant offense were the result of unfortunate access an opportunity at a time of weakness."  Defendant's Sentencing Memorandum, at 21.  Weakness for anally and vaginally raping 9 year olds then photographing her genitals?  Defendant claims Reed's "remorse for his actions is deep and sincere."  Def's Sent. Memo at 26.  Yet, he claims he rapes, molests and photographs little girls due to weakness, dementia and/or sleep apnea.  None of those excuses suggest true remorse by Reed.

Reed has a deviant interest in the sexual abuse of children and he achieved that abuse through manipulation and gift-giving.  Child pornography is devoid of any trace of social value and it inflicts serious and reprehensible harm upon the children exploited in its production.

The United States requests this Honorable Court impose a sentencing that reflects the seriousness of the defendant's conduct.  The United States respectfully requests a sentence of 90 years in prison.

## A. Procedural History

On September 9, 2015, a grand jury sitting in Harrisburg, Pennsylvania returned a sealed four count Indictment, naming Jay Eugene Reed as its only defendant.   The Indictment charged Reed with Sexual exploitation of children – Production of child pornography, in violation of Title 18 U.S.C. §2251(a) (Count 1); Possession of child pornography, in violation of Title 18 U.S.C. §2252A(a)(5)(B) (Count 2); and Tampering with a victim or witness, in violation of Title 18 U.S.C. §1512(b)(3) (Counts 3&4).

On February 2, 2017, Reed pleaded guilty without any written plea agreement to all counts of the Indictment.  Sentencing is currently scheduled for October 30, 2018.

The United States Probation Office prepared a Pre-Sentence Investigation Report and determined Reed has a Criminal History Category I and a total offense level of 43.  *See* PSR ¶65, 77.  Therefore, the advisory guidelines call for a sentence of life in prison.  *See* PSR

¶110.  However, due to the statutory maximums for the four offenses in the indictment, the guideline term is 1,080 months.  *See* PSR ¶110.

On August 29, 2018, defendant filed a Sentencing Memorandum requesting a variance below 90 years in prison to the 15 year mandatory minimum term of imprisonment because "this court should consider a sentence which would allow him [Reed] a meaningful opportunity to return to society."  *See* Def's Sent. Memo. at 4. Defendant later argues this Court should depart from the 90 year guidelines to the 15 year mandatory minimum because "[n]o one should be finally judged only by the worst thing they have ever done in their life."  *See* Def's Sent. Memo. at 26.

For a multitude of a reasons discussed in this memorandum, the United States respectfully submits this Honorable Court must do just that, judge Reed for what he has done in this case in connection with a consideration of the 3553 factors.  Hopefully, the heinous facts that make up this case are "the worst thing" defendant Reed has ever done. On behalf of the victims who will suffer for a lifetime because of the abuse meted out by Jay Reed and to protect the community from Reed

victimizing anyone in the future, the United States respectfully requests a 90 year sentence for this defendant.

## B. Nature and Circumstances of the Offense, and the History and Characteristics of the Defendant

Reed claims he "was suffering from progressive dementia at the time of the crimes." Def's Sent. Memo. at *17. Despite having Reed examined by two defense experts and having an MRI performed, the defense presents no substantiated evidence to support that statement. The MRI scan shows none of the classic signs of the onset of dementia, which the defense concedes on page 18 of their sentencing memorandum. Dr. Silverman refers to the possibility of some "brain dysfunction or abnormalities," but also states this is "beyond his expertise." Def's Sent. Memo. at Ex. 4. There is no evidence presented to support the bold heading on page 17 that Reed was suffering from progressive dementia at the time of the crimes.

It is difficult to overstate the egregious nature of Reed's conduct. It is simply shocking. To rape, molest, photograph and mentally, and emotionally manipulate young girls bespeaks of true cruelty. To argue some alleged challenges faced by the defendant in his life are somehow

an explanation or justification for his crimes sexual exploitation of
minors is offensive.  Every individual faces challenges in their life, some
more severe, some less severe – but no challenge provides any
explanation, justification or mitigation for the types of heinous offenses
committed by Reed.  The victims of his crimes are the ones who have
experienced challenges beyond imagination.

Reed told both defense experts he photographed the victims to
assist the girls with hygiene.  Specifically, Dr. Dattilio and Dr.
Silverman reported Reed stated the photographs he took of the victims
naked were "a way of showing them how dirty they were because they
were not bathing themselves appropriately" and "to enable them to
recognize the need for removing dirt that had accumulated on their
bodies after playing in mud puddles, etc."  Def's Sent. Memo. at Ex. 1 pg
12, Ex 2 pg 2.  The United States will have a very small sample of the
images from Reed's devices for the Court's review at the sentencing
hearing in light of Reed's statements to both defense experts.  The
defense has reviewed these images in advance.

Despite Reed's claims or his counsel's arguments that desperately
try to explain his conduct in this case, there simply is no justification for

what Reed did to the victims in this case – the repeated sexual assaults, the manipulations, the grooming, the psychological confusion and the inevitable worry about who has seen those images and whether they are preserved for eternity on the internet.  Nothing the defendant presented can explain, justify or mitigate even a portion of what the multiple young victims have endured in their very short lives on this planet. Therefore, no downward variance is warranted in this case.

While most federal child exploitation offenses do not involve direct contact with the children, Reed's direct victimization requires increased punishment to reflect the seriousness of his offenses.  His crimes were not isolated incidents, but rather a pattern of abuse.  The nature and circumstances of these offenses – namely the rape, molestation and photographing of the genitals of the multiple young victims, along with the manipulative conduct and the obstruction of justice – requires a substantial sentence, the sentence of 90 years in prison, to reflect the seriousness of the offense, serve the ends of justice and protect the community.

## C. Seriousness of the offense, Promoting respect for the law

Pursuant to 18 U.S.C. § 3553, this Honorable Court, in determining an appropriate sentence, should consider the seriousness of the offense, promote respect for the law, and provide just punishment to a defendant. This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S. Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Because the "punishment should fit the crime, the more serious the criminal conduct is, the greater the need for retribution and the longer the sentence should be. The seriousness of the crime varies directly with the harm it causes or threatens. It follows that the greater the

harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *Id.*

This concept is especially applicable in the instant case, because "child sex crimes are among the most egregious and despicable of societal and criminal offenses." *Id.; see also United States v. Foss*, 501 F.2d 522, 527 (1st Cir. 1974) (cited with approval in the legislative history of Section 3553(a)) ("[T]he view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others .... This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others.").

The Third Circuit, in *United States v. Goff*, 501 F.3d 250, 258-59 (3d Cir. 2007) reversed a sentence that was too lenient in a child pornography case, explaining that the children's "injuries and the taking of their innocence are all too real" in such cases. (citing *New York v. Ferber,* 458 U.S. 747, 759 (1982)) ("The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."); *see also Osborne v. Ohio,* 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the

child victims continuing harm by haunting the children for years to come."). The *Goff* court further observed that when Congress passed the Child Pornography Prevention Act of 1996, it found that "where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." *Goff*, 501 F.3d at 259 (citing Child Pornography Prevention Act of 1996 ("CPPA"), Pub.L. 104–208, sec. 121, 110 Stat. 3009–26, reprinted in 18 U.S.C. § 2251 note at 611).

Here, Defendant should be sentenced to the maximum because his criminal conduct has a high likelihood of resulting in the premature death of the victims. While this statement sounds like an assertion borne of speculation and bordering on hyperbole, there is strong scientific support demonstrating that due to the sexual abuse these girls suffered at the hands of the defendant, each one of them is at an increased risk of falling prey to alcohol abuse, illicit drug use, sexual promiscuity, and suicide.

In the late 1990s, the Kaiser Permanente San Diego Health Appraisal Clinic, a primary care clinic where more than 50,000 adult

members of an HMO receive medical examinations, began a study to examine the long-term relationship between Adverse Childhood Experiences (ACEs) and a variety of health behaviors and health outcomes in adulthood. First, they took a survey of adults who were members of the Kaiser HMO to determine the number of ACEs experienced. An ACE was defined to include an experience occurring to the adult before the age of 18, such as verbal abuse, physical abuse, contact sexual abuse, a battered mother, household substance abuse, household mental illness, incarcerated household members, and parental separation or divorce. The survey data was collected in 1995-1997.

In early 2009, using the National Death Index mortality data, researchers analyzed how many of the 17,337 original survey respondents were deceased 10 years after the survey. The results were startling. "People with six or more ACEs died nearly 20 years earlier on average than those without ACEs." David W. Brown, et al, *Adverse Childhood Experiences and the Risk of Premature Mortality*, 37 American Journal of Preventive Medicine 389-96 (2009). In other words, if a person in the control group lived to 79.1 years old, that same person

will only live to age 60.6 years old if he experienced six or more ACEs before the age of 18.  This statistic is shocking.

While it is certainly alarming to know that serious negative experiences in childhood could be correlated with such a precipitous drop in life expectancy, the ACE Study expressly observed that "[t]here are several reasons to believe that these estimates of the relationship between ACEs and premature death are *conservative*." *Id.* at 394 (emphasis added). Indeed, when the initial survey was conducted in 1995-1997, approximately 60% of the survey respondents were already 50 years or older. Given that fact, "it is reasonable to postulate that people who are exposed to ACEs (particularly multiple ACEs) are more likely (compared to those who are unexposed) to be aborted; to die during childhood or young adulthood; to be institutionalized; or to be otherwise lost prior to the initiation of the ACE Study." *Id.* at 394-95. In addition, the survey respondents were of a population who were enrolled in a major health plan at that time, i.e., "predominantly white, middle-class adults." *Id.* at 394. Due to these facts about the survey population, "the association between ACEs and premature all-cause mortality would be biased downward." *Id.* at 395. In other words, it is

13

reasonable to conclude that an ACE victim's risk of premature mortality is even greater than the ACE Study results show, especially if the victim is already of a minority group.

Additional research using the same survey data has drilled deeper to better understand the relationship between the severity of the childhood *sexual* abuse (not just adverse childhood experiences) and long-term health and social problems. *See* Shanta R. Dube, et al, *Long-Term Consequences of Childhood Sexual Abuse by Gender of Victim*, 28 American Journal of Preventive Medicine 430-38 (2005).  First, the study bifurcated the population of sexual abuse victims by classifying them into "sexual abuse, no intercourse" and "intercourse." Intercourse was defined as answering "yes" to the question of whether any "adult, relative, family friend, or stranger ever" attempted or actually had "any type of sexual intercourse with you (oral, anal, or vaginal)."

The scientific articles interpreting the ACE Study very clearly demonstrate the profound long-term consequences of various kinds of adverse childhood experiences, especially childhood sexual abuse. Reed's victims, who were exposed to repeated sexual abuse by Reed,

now have a significantly increased risk of attempting suicide, using illicit drugs, and developing alcohol problems.

Finally, there is an increased chance that they will die 20 years early. All because Defendant Reed repeatedly chose to use them as a sexual object for his own base gratification. In short, Defendant has forever impacted the lives of these little girls in ways that have significant long-term health consequences, and thus his abuse of the victims will redound to the girls detriment in profound ways. Therefore, a 90 year sentence would be both reasonable and appropriate—"just punishment" in § 3553(a) language—given the lifelong consequences the Victims will likely experience due to Defendant's repeated acts.

Notably, Defendant Reed's expert, Dr. Silverman, does not reference the ACE study in his Report. See Def's Memo, Ex. 1 and Ex. 4.

The seriousness of these offenses cannot be overstated. The defendant has irrevocably harmed these girls. Reed violated the victims mentally and physically, violating the bonds of family, trust, friendship and their bodies. But Reed's abuse did not stop even upon his arrest. Reed obstructed justice by sending a letter to a minor victim telling her

not to talk to anyone about this case and another letter to the victim's grandmother encouraging her not to allow the victims to talk to law enforcement about what happened.  Indeed, Defendant Reed's victimization of multiple young girls caused real damage to innocent children and will haunt them for years.

For these reasons, only the maximum sentence provided for under the law and the guidelines of 90 years promotes respect for the law and provides just punishment given the serious and depraved nature of the Reed's criminal offenses. *See* 18 U.S.C. § 3553(a)(2)(A).

### D. The Need for the Sentence Imposed to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See Rita v. United States*, 551 U.S. 338, 349 (2007).  In fact, courts have placed a high importance on the need for deterrence in cases of hands-on sexual abuse of children due to the "heightened concern in sex offense cases with an offender's potential for recidivism." *United States v. Armendariz*, 451 F.3d 352 (5th Cir. 2006). In *Armendariz*, the Court of Appeals vacated and remanded for

sentencing a district court's sentence of five years imprisonment with no supervised release because the sentence did not sufficiently consider the need for the sentence to deter the defendant and to protect the public.  Specifically, the Court noted that, "[e]specially in the case of a sex crime – and particularly for one involving a child – the need for deterrence, protecting the public, and providing the offender with necessary correctional treatment are highly relevant factors that should have been effectuated in the sentence that the district court imposed." *See id.* at 362;  *see also United States v. Jones*, 289 Fed. App'x 798 (5th Cir. 2008); *United States v. Planck*, 493 F.3d 501, 506 (5th Cir. 2007). Similarly, in *United States v. Gonzalez*, the Fifth Circuit approvingly quoted the sentencing judge's rationale for a Guidelines departure:

> The court's experience with these sorts of folks is that they never get better. Sex offenders have the lowest rate of recovery and the highest rate of recidivism of any criminal defendant. This is an addiction that is almost impossible to overcome. And I think for the benefit of society and for the benefit of the protection of those who are victimized by these sorts of crimes to prevent this individual being a proven consumer of this creating a lifeline, as it were, to this kind of insidious industry requires a lifetime of supervision.

*United States v. Gonzalez*, 445 F.3d 815, 819-20 (5th Cir. 2006) (quoting sentencing court).

The defense argues for a sentence that lets Defendant Reed walk out of prison in 15 years.  *See* Def's Memo at 20.  But there is ample evidence that even older men commit horrible crimes against children. This Court only has to walk up one flight of stairs to discuss that very issue in a case that recently came before the Honorable John E. Jones, III in this courthouse.  *See United States v. Berwager*, No. 1: 16-CR-177.  A man with no prior criminal history, a man with a distinguished military record and a supportive family, sexually assaulted, molested, raped, produced and distributed child pornography involving his own very young family members while he was in his 70s.  Judge Jones sentenced Berwager to 240 months at the urging of the family.[1]  *See also United States v. Seljan*, 547 F.3d 993, 997–98 (9th Cir. 2008) (en banc) (87–year–old defendant sentenced to 20 years for sexually abusing children); *see also United States v. Zastrow*, 534 F.3d 854, 855 (8th Cir. 2008) (73–year–old man sentenced to 20 years for enticing or coercing an 8–year–old girl into sexually explicit conduct which he photographed).

---

[1] The statutorily authorized maximum on the production of child pornography was 360 months.

Indeed, even if Defendant were imprisoned long enough that he would be *less likely* to commit sexual assaults on children, scholarly research in this area demonstrates that sexual predators like Defendant will simply change their *modus operandus.*

> Generally, older sex offenders engage in more passive sexual activity as compared to their younger counterparts. For example, fondling by elderly offenders is more prevalent than intercourse. Research has shown that elder offenders are more likely to commit 'nonviolent' sexual offenses such as pedophilia or exhibitionism as opposed to 'violent' offenses such as forcible rape. Specific examples of these 'nonviolent' offenses include improperly touching an acquaintance, statutory rape, exposing of the genitals (usually to a minor), and other acts of exhibitionism.

Matt Hart, *The Geriatric Sex Offender: Senile or Pedophile?*, 32 Law & Psychol. Rev. 153 (2008).  It is beyond peradventure that Defendant's sexual victimization of numerous minor girl victims is enough to demonstrate that he has a deviancy that has and will continue to put the community at risk regardless of his age.

The defense claims Reed's behavior was as a result of some medical condition and did not comprehend the wrongness of his conduct.  *See* Def's Sent. Memo. at 17.  This argument is severely undermined by Reed's actions post arrest.  Following Reed's arrest by the local authorities and at a point when he definitely knew what he

19

had been doing was not only wrong but criminal as he sat in jail facing local charges for rape among other things,  Reed attempted to tamper with one of the minor victim's testimony and obstructed justice by sending a letter from jail to that minor victim telling her not to talk to anyone about this case. Reed also sent a similar letter to the victim's grandmother encouraging her not to allow the minor victims to talk to law enforcement about what happened.

Dementia did not make him write these letters.  Sleep apnea did not make him write these letters.  Brain dysfunction did not make him write those letters.  Some other mysterious medical condition did not make him write those letters.  Fear did.  Reed wrote those letters because he knew all the horrible, illegal behaviors he had perpetrated on those little girls. He had the understandable reaction of being afraid of being prosecuted for those horrible, illegal behaviors and spending the rest of his life in a cell.  So, he tried to minimize the damage by getting to the witnesses.  Unfortunately for him, his plan back-fired and actually resulted in an additional two counts on his federal indictment. Those letters are concrete evidence that demonstrate this medical mitigation argument is meritless.

Reed was then and is now a danger to the victims and to the community. Accordingly, a sentence of 90 years is imperative to adequately protect the victims and community from the defendant.

## E. The Need to Avoid Unwarranted Sentencing Disparities

The recommended Guidelines sentence of 90 years is not an unreasonable sentence, and certainly would not be anomalous in the context of production of child pornography offenses in federal court. Many defendants who engaged in conduct similar to (and far less egregious than) Reed have received comparable sentences. Indeed, as the table below demonstrates, from Fiscal Year 2008 through Fiscal Year 2017 (the most recent date of available data), federal judges across the country have sentenced 118 defendants convicted of production of child pornography offenses to terms of imprisonment of 1020 months (85 years) or more. Approximately 47 of those defendants received an actual Life sentence, whereas others received an effective life sentence.

|   | District | Defendant's Name | Court Number | Sentence Date (Yr-Mo-Day) | Prison Time (Months) |
|---|----------|------------------|--------------|---------------------------|----------------------|
| 1 | FLM | MATTHEWS, SAMUEL | 8:07-CR-247-T | 71030 | LIFE |
| 2 | ILC | Rosenbohm, Justin | 07-10117 | 80627 | LIFE |
| 3 | KYW | Moore, James T. | 3:06CR-98-S | 80304 | LIFE |
| 4 | MN | Paton, Lyle Robert | CR06-298PJS/SRN | 71022 | LIFE |
| 5 | MT | Gallenardo, William | CR 07-04-BU-DWM | 71026 | LIFE |
| 6 | TNE | Becker, David Aaron | 3:07-CR-22 | 71026 | LIFE |
| 7 | ARW | White, Arthur | 3:09CR30001 | 90624 | LIFE |
| 8 | CAE | Harrod, Allen | 03-CR-00384-S | 90427 | LIFE |
| 9 | CAE | LaBrecque, Michael | 03-CR-00384-S | 90427 | LIFE |
| 10 | FLM | MATTHEWS, SAMUEL | 8:07-CR-247-T | 71030 | LIFE |
| 11 | FLN | Freeman, James Andrew | 08-CR-00022-03-LAC | 90505 | LIFE |
| 12 | FLN | Mumpower, Warren K. | 08-CR-00022-03-LAC | 90722 | LIFE |
| 13 | FLN | Lakey, Gary Wayne | 08-CR-00022-03-LAC | 90420 | LIFE |
| 14 | FLN | McGarity, Neville R. | 08-CR-00022-03-LAC | 90420 | LIFE |
| 15 | FLN | Lambert, Marvin Laverne | 08-CR-00022-03-LAC | 90420 | LIFE |
| 16 | FLN | Castleman, Daniel Scott | 08-CR-00022-03-LAC | 90420 | LIFE |
| 17 | ILS | Courtright, Carl | 07-CR-30179-DRH | 90724 | LIFE |
| 18 | ILS | Masulla, Louise | 08-CR-30234-GPM-DGW | 90731 | LIFE |
| 19 | ILS | Robinson, Tabitha D. | 08-CR-30234-GPM-DGW | 90813 | LIFE |
| 20 | ILS | Milligan, William | 08-CR-30234-GPM-DGW | 90731 | LIFE |
| 21 | LAW | Daranda, Ben | 07-CR-10022-01 | 81125 | LIFE |
| 22 | NV | Latham, Robert Myron | 06-CR-00379-LDG(GWF) | 90304 | LIFE |
| 23 | NYN | Sacco, Dean | 08-CR-00077 | 90303 | LIFE |

22

| 24 | PAE | Marz, Robert Paul | 07-CR-00199 | 90914 | LIFE |
|---|---|---|---|---|---|
| 25 | TXW | Carmony, Charles Wayne | SA08CR036 | 90224 | LIFE |
| 26 | ALM | Smith, Ricky Randall Rex | 07-CR-00183-WKW | 100402 | LIFE |
| 27 | ALN | Simons, John Lawson | 08-CR-00408-CLS-TMP-5 | 100818 | LIFE |
| 28 | INS | Rarey, Rickie | 1:09-CR-130-M/F | 100224 | LIFE |
| 29 | MIE | Frazee, James | 10-CR-20082 | 100909 | LIFE |
| 30 | ALS | McGee, Bernard | 10-CR-00162-CG | 110303 | LIFE |
| 31 | ARW | Wilson, James H. | 2:09CR20063 | 101021 | LIFE |
| 32 | FLS | Rios, Jesus | 09-CR-60054-JIC | 101227 | LIFE |
| 33 | MD | Davison, Jesse Aaron | 10-CR-00632 | 110830 | LIFE |
| 34 | MIE | Demink, Steven | 10-CR-20676 | 110926 | LIFE |
| 35 | DE | Pavulak, Paul E. | 09-CR-00043-SLR | 111014 | LIFE |
| 36 | FLS | Mozie, James | 11-CR-60121-WPD | 120625 | LIFE |
| 37 | NYN | Rood, Flay | 10-CR-00149 | 111007 | LIFE |
| 38 | MOE | GRAVENMIER, JACK E. | 12-CR-00464 JAR | 130429 | LIFE |
| 39 | MOW | Smith, Todd C. | 11-CR-05044-01 | 121221 | LIFE |
| 40 | VAE | Sebolt, Philip Michael | 12-CR-00033-3 | 130128 | LIFE |
| 41 | GAN | HUTCHINSON, TREMAIN | 12-CR-00409-1 | 140106 | LIFE |
| 42 | ILC | Hendricks, Jerry L. | 12-CR-20025 | 140630 | LIFE |
| 43 | VT | Jacques, Michael S. | 08-CR-00117-WKS | 140521 | LIFE |
| 44 | VAE | Scott, Robert Harold, Jr. | 13-CR-00164-2 | 141123 | LIFE |
| 45 | IAS | Faler, James Everett | 14-CR-00021 | 151124 | LIFE |
| 46 | NCW | Muslim, Shahid Hassan | 13-CR-00307:3 | 160518 | LIFE |
| 47 | NJ | WARES, CLIFFORD | 15-CR-00570 | 160708 | LIFE |
| 48 | ALN | Ayers, Patricia Allana | 14-CR-00117-LSC-SGC-5 | 141219 | 19080 |
| 49 | ALN | Falgout III, Pierre Ernest | 6:07-CR-00157-RDP-RRA | 80620 | 11520 |
| 50 | ALN | Ayers, Matthew David | 14-CR-00117-LSC-SGC-5 | 141219 | 9000 |

| | | | | | |
|---|---|---|---|---|---|
| 51 | NYN | Howells, II, Stephen M. | 14-CR-00340 | 151228 | 6960 |
| 52 | ALN | Hulsey, James Shawn | 08-CR-00313-IPJ-RRA-2 | 91007 | 5760 |
| 53 | TXW | Simmons, Gemase Lee | 12-CR-00108-S | 130812 | 5760 |
| 54 | ALN | McKim, Christine Staggs | 08-CR-00313-IPJ-RRA-2 | 91007 | 5400 |
| 55 | INS | McGrath, Andrew | 1:09-CR-0169-L/F | 100517 | 4440 |
| 56 | FLM | TATRO, JOSHUA ADAM | 15-CR-00176-ORL | 161212 | 4200 |
| 57 | ALN | Vasiloff, Gary Steven | 4:07-CR-00337-VEH-PWG | 80204 | 3900 |
| 58 | ALN | Hayes, Gordon Elton | 4:07-CR-00062-IPJ-TMP | 70824 | 3720 |
| 59 | MOE | BEASLEY, LELAND | 10-CR-00119 CEJ | 110712 | 3480 |
| 60 | KS | Grigsby, Philip | 12-CR-10174-JTM | 130605 | 3120 |
| 61 | INS | Bostic, David Ryan | 1:11-CR-027-JMS-KPF | 120113 | 3060 |
| 62 | OHS | Napier, James O. | 13-CR-00016-1 | 140520 | 2880 |
| 63 | INN | Eckstrom, Daniel T. | 13-CR-00084-02 | 160330 | 2880 |
| 64 | MIW | COX, JEFFREY | 14-CR-00198 | 161004 | 2880 |
| 65 | INS | Metzger, David | 09-CR-00188-LJM/KPF1 | 100525 | 2820 |
| 66 | FLM | GRAZIOTTI, MATTHEW C. | 14-CR-00175-ORL | 150128 | 2520 |
| 67 | TXN | Rinehart, Timothy | 13-CR-00091-B-DL | 150416 | 2160 |
| 68 | TNW | Milam, Terrence | 15-CR-20091 | 170815 | 2040 |
| 69 | MOE | DEVLIN, MICHAEL | 4:07CR143 JCH | 71226 | 2010 |
| 70 | NH | Wright, John Allen | 11-CR-00146-SM | 130225 | 1920 |
| 71 | MSS | Spear, Philip Joseph | 17-CR-00017-LGRHW1 | 170707 | 1920 |
| 72 | FLN | Olmeda, Keith | 09-CR-00030-01-SPM | 100209 | 1800 |
| 73 | NYN | Hamilton, Wayne | 11-CR-00555 | 121113 | 1800 |
| 74 | NCE | Davis, John Thomas | 09-CR-00018-BO | 90505 | 1680 |
| 75 | FLM | COWAN, ROBERT ALLAN | 09-CR-00387-J | 111208 | 1680 |

| | | | | | |
|---|---|---|---|---|---|
| 76 | LAM | Miller, Paul W. | 10-CR-00102-JJB-DLD | 120520 | 1680 |
| 77 | ALN | Nelson, Jeremy Joseph | 14-CR-00372-MHH-JEO-5 | 150813 | 1680 |
| 78 | FLS | Killen, Patrick,Jr | 15-CR-20106-KMM | 151202 | 1668 |
| 79 | FLS | Castillo, Edgar Geovani Esquivel | 10-CR-20120-DMM | 100928 | 1560 |
| 80 | ID | Wilkinson, William Roger | 14-CR-00168-S-BLW | 160404 | 1560 |
| 81 | MIW | HINOJOSA, MICHAEL JAMES | 1:06-CR-93 | 80319 | 1440 |
| 82 | NYS | DAVIS, WILLIAM | 07 CR 0468 | 90824 | 1440 |
| 83 | MOE | MARTIN, MICHAEL PAUL | 09-CR-00760 JCH | 100729 | 1440 |
| 84 | NCM | Hallman, David Matthew | 12-CR-00010 | 130108 | 1440 |
| 85 | VAW | Cobler, James Robert | 12-CR-00026 | 130215 | 1440 |
| 86 | NCM | Hallman, David Matthew | 12-CR-00010 | 130108 | 1440 |
| 87 | VAW | Cobler, James Robert | 12-CR-00026 | 130215 | 1440 |
| 88 | TXW | Callaway, Harold Bruce | 13-CR-00187-M | 140912 | 1440 |
| 89 | IAS | Zollman, Timothy Ryan | 15-CR-00167 | 160912 | 1440 |
| 90 | MN | Edge, Deborah Susan | 14-CR-00201 | 151002 | 1440 |
| 91 | NYE | VALERIO, JOSEPH | 14-CR-00094-02 | 170926 | 1440 |
| 92 | INS | Hodge, Larry Everett | 11-CR-00007-RLY-WGH-3 | 120531 | 1380 |
| 93 | ILN | Boroczk, Darrick C. | 09-CR-00647 | 120110 | 1340 |
| 94 | FLM | DICKERSON, IVORY | 07-CR-00150-ORL | 90407 | 1320 |
| 95 | MT | Fox, Ralph | CR 07-47-M-DWM | 81017 | 1320 |
| 96 | KYW | Davis, Tony | 12-CR-00028-B-M | 130531 | 1320 |
| 97 | IAN | Stong, Benton | 13-CR-02014 | 140204 | 1320 |
| 98 | INS | Al-Awadi, Ali | 15-CR-00072-TWP-DML-1 | 160630 | 1296 |
| 99 | FLM | CHANSLER, LUCAS MICHAEL | 10-CR-00100-J | 141117 | 1260 |
| 100 | FLM | SARRAS, DONATOS | 6:07-CR-92-ORL | 80410 | 1200 |

| | | | | | |
|---|---|---|---|---|---|
| 101 | MOE | GREENWELL, JEFFREY | 09-CR-00757 CAS | 111018 | 1200 |
| 102 | FLS | Williams, Scott Michael | 12-CR-10029-JLK | 130723 | 1200 |
| 103 | MD | Scott, Jason T. | 10-CR-00031 | 130719 | 1200 |
| 104 | MOW | Hajny, James | 14-CR-05022-01 | 161215 | 1200 |
| 105 | MIW | HERRICK, SCOTT ALLAN | 10-CR-00207 | 120117 | 1140 |
| 106 | TXW | Moreno, Luis | 11-CR-00882-S | 131226 | 1140 |
| 107 | TXE | Stewart, James Rustin | 09-CR-00159-1 | 100823 | 1080 |
| 108 | OHN | Lennard, Shawn M. | 09-CR-00444 | 101005 | 1080 |
| 109 | FLM | BRANDT JR., WESLEY | 11-CR-00058-T | 111109 | 1080 |
| 110 | GAS | Rivera, Angel Luis | 11-CR-00007 | 130118 | 1080 |
| 111 | ILS | Horton, Christopher Michael | 13-CR-30042-DRH | 140310 | 1080 |
| 112 | FLM | SPEER, STEVEN | 13-CR-00561-T | 141106 | 1080 |
| 113 | NYN | Staples, Ryan | 13-CR-00440 | 141024 | 1080 |
| 114 | ALN | Lee, Gregory Jerome | 16-CR-00081-VEH-TMP-5 | 170930 | 1080 |
| 115 | MIE | Pierce, Michael | 16-CR-20192 | 170925 | 1080 |
| 116 | MT | Threadgill, Kenneth | CR 07-89-GF-SEH | 80116 | 1020 |
| 117 | CT | Sensi, Edgardo M. | 08-CR-00253 | 120209 | 1020 |
| 118 | OHS | Guy, David A. | 15-CR-00018-1 | 160711 | 1020 |

These sentences exceeding 1,020 months represent a broad cross-section and are not confined to a few districts in a small area of the country where more severe sentences might be perceived to be more common. Indeed, these 118 sentences come from 52 different districts, from the District of Vermont to the Eastern District of California; from the District of Idaho to the Southern District of Florida. Moreover,

many of these cases have facts that are less egregious than the facts in Reed's case.

For example, in *United States v. Wares*, 15-CR-570 (DNJ), the 39-year-old defendant was sentenced to Life for coercing two victims, ages 13 and 14, to send him sexually explicit photographs, and then meeting the 14-year-old in person and engaging in oral sex. *See United States v. Wares*, 689 F. App'x 719 (3d Cir. 2017) (affirming Life sentence).

In *United States v. Guy*, 15-CR-18 (NDNY), the defendant was sentenced to 1,020 months for producing child pornography with one seven-year-old victim. In *United States v. Napier*, 13-CR-16 (SDOH), the defendant was sentenced to 2,880 months for producing child pornography of a nine-year-old and an infant. In *United States v. Howells*, 14-CR-340 (NDNY), the defendant, also a first-time offender, was sentenced to 6,960 months for producing child pornography of six victims.

This District rarely sees an offender as dangerous as Reed. Indeed, this Court, in *United States v. Walpole*, 10-CR-340 (MDPa) (Kane, J.) sentenced that defendant to 600 months for surreptitiously recording a 14-year-old child masturbating, and for his large collection

of child pornography acquired from peer-to-peer file-sharing. The Third Circuit affirmed, but remanded for resentencing due to a criminal history calculation error that the Court of Appeals was uncertain how it affected this Court's "thoughtful consideration in designing the sentence it imposed." *United States v. Walpole*, 543 F. App'x 224, 231 (3d Cir. 2013). On remand, after changing the defendant's criminal history score from V to I, this Court nevertheless imposed the same 600-month sentence, and the Third Circuit affirmed, concluding that this Court "meaningfully considered the arguments of the parties and discussed the sentencing factors" and "explained that the sentence was warranted given [the defendant's] sexual exploitation of a child and the quantity of the images in [the defendant's] child pornography collection." *United States v. Walpole*, 599 F. App'x 56, 58 (3d Cir.), *cert. denied*, 136 S. Ct. 155 (2015).

Reed's case is most similar to the *Curran* case, where a statutory maximum 70 year sentence was upheld by the Third Circuit. *See United States v. Curran*, 638 F. App'x 149, 152 (3d Cir.), *cert. denied*, 137 S. Ct. 180 (2016). This 70 year sentence is one of the largest sentences in the Middle District of Pennsylvania for a § 2251(a)

violation in the past several years.  Daniel Curran, sexually abused a 9-year-old boy for about two months, including anal rape, and documented that sexual abuse by photographing and videoing it. Similar to the *Reed* matter, there was evidence that Curran attempted to obstruct justice by trying to convince the victim to identify another perpetrator.  The United States also had no evidence in the *Curran* case that the photos or videos were distributed, just as in *Reed*.  The Honorable William W. Caldwell sentenced Curran to 840 months, the statutory maximum, by running the three counts of conviction consecutive, as the United States requests this Honorable Court do in *Reed* with the four counts.

Similar to Reed, Defendant Curran was 41 years old at the time of sentencing, and he had no prior convictions or history of sexual abuse of children. On appeal, Curran argued that a sentence of 840 months would make him 111 years old at the time his sentence was completed. The Third Circuit affirmed the sentence as reasonable, noting that the District Court acknowledged that the sentence "could be a life sentence." *United States v. Curran*, 638 F. App'x 149, 152 (3d Cir.), *cert. denied*, 137 S. Ct. 180 (2016).

Similarly, on October 25, 2017, the Honorable Sylvia Rambo sentenced Defendant Michael Clarke, age 44, to 600 months for producing, transporting and possessing child pornography. *See United States v. Matthew Charles Clarke,* No. 1:16-CR-103.  Clarke raped his minor victim from the ages of 5 to 12 and recorded these assaults and also surreptitiously recorded another minor victim while naked and transported that pornography across state lines.

This case arguably merits a similar sentence to *Curran* based on the nature and circumstances of the offense alone. Indeed, here, Reed has multiple local victims, whereas Curran had one victim.  Given the other similarities and the additional victims in the Reed matter, the statutory maximum sentence is appropriate, as it was in *Curran*, to avoid a sentencing disparity.

Defendant, in his sentencing memo, cites to three cases from this District as examples of sentences of "terms of years" for production of child pornography.  *See* Def's Sent. Memo. at *20.  First, Defendant cites *United States v. Kelson*, 13-CR-61 (M.D. Pa 2014 (Brann, J.), noting that the defendant "took pornography photographs of a 4-year-old female for whom he was a live-in babysitter" and Judge Brann

imposed the mandatory minimum of 15 years. *See id.* at 13.  Defendant fails to elucidate the additional facts that put the *Kelson* case in stark contrast to the instant matter. Indeed, the only potential similarity is both defendants were charged with sexual exploitation of children-production of child pornography; after that, the facts widely diverge.

The defendant in *Kelson* took 8 photographs of the 4-year-old child's buttocks and vaginal area. A forensic examination of his devices did not locate any additional images of child pornography. The defendant, who was 21-years-old at the time, also had a 16-year-old girlfriend with whom he had engaged in sex. Photos from his camera showed there were two photos of the 16-year-old showing her naked. Additionally, one of the photos showed the defendant's penis penetrating the 16-year-old. The Guidelines range was 235-293 months, but the plea agreement, pursuant to Rule 11(c)(1)C), bound the Court and the parties to a range of 180-240 months. The Court sentenced the defendant at the bottom of the stipulated range. These facts are a far cry from the multiple 9-13 year old victims Reed raped, molested, photographed and manipulated so he satisfy his sexual urges.  There was no evidence in the *Kelson* case of hands on abuse.

Next, Defendant cites *United States v. O'Connor*, No. 12-CR-217 (M.D. Pa. 2014) (Conner, C.J.), noting that the defendant "streamed his sexual encounters with a 14-year-old male over the internet" and was ultimately sentenced to 35 years.[2]  *See* Def's Sent Memo. at *21.  The facts in the *O'Connor* case are also extremely divergent from those in Reed's case.   While O'Connor did stream sexual abuse of a minor boy online, O'Connor's conduct cannot be placed into the same category as Reed.  The evidence in O'Connor's case consisted of approximately 2-3 incidents of O'Connor manually stimulating the minor's penis and having the minor manually stimulate O'Connor's penis.  There were not the multiple identified victims as in *Reed* or the rapes or the hundreds of images of the victims recovered.   O'Connor's contact with a minor, while reprehensible and deserving of punishment, is not akin to the manipulative, heinous acts Reed performed on his victims.

Next, Defendant cites *United States v. Brooks*, 08-CR-455 (M.D. Pa 2011) (McClure, J.), noting that the defendant "produced

---

[2] Defendant states O'Connor received a 40 year sentence, but after reviewing the sentencing transcript and the Third Circuit appeal, the sentence imposed was 35 years.  *See* Def's Sent. Memo. at *13.  AUSA Meredith Taylor and Federal Public Defender Heidi Freese handled the *O'Connor* case.  AUSA Meredith Taylor also prosecuted the cases of *United States v. Daniel Curran*, *United States v. Brian Kelson*, *United States v. Michael Clarke* and assisted with the prosecution of *United States v. Berwager*, cited above, if the Court needs more details about these prosecutions.

pornographic images of her 9-year-old adopted daughter and taught her how to use various sex toys" and was ultimately sentenced to 20 years. *See* Def's Sent Memo. at *21.  Again, Defendant fails to provide the salient details that demonstrate how vastly different that case was from the instant matter. In *Brooks*, the defendant persuaded her 9-year-old adopted daughter to pose in various sexual position on a webcam for others to watch. The defendant further showed the child how to use a "butterfly" sex toy on her clitoris. A forensic analysis of the electronic devices from the home revealed approximately 40 photographs of the child, some of which were only topless, and a 90-second video of the child posing naked from the waist up, and at times removing her underwear to expose her genitalia. The defendant in *Brooks* went to trial, and was convicted on two counts, one of production, and one of possession of child pornography. Her Guidelines range was 235-293 months, and she was ultimately sentenced to 240 months. There was nothing in *Brooks* even closely approximating the multiple victims, the rapes, molestation, the hundreds of images and the gift-giving manipulation in *Reed*.  These two cases are not analogous.

The Third Circuit has affirmed even more significant sentences in cases less egregious than this one. For example, the Third Circuit posthumously affirmed Judge Harold A. Ackerman of the District of New Jersey, who sentenced Russell Christie to the statutory maximum of 1,080 months (via consecutive sentences) for his role as the moderator of a child pornography website where people traded child pornography. That is, Christie was convicted of child pornography trafficking, not production, and despite the defendant having no history of hands-on sexual abuse of children, the Court of Appeals affirmed his sentence, saying "we are satisfied that the sentence was within the bounds of reasonableness." *United States v. Christie*, 624 F.3d 558, 575 (3d Cir. 2010).

Similarly, in *United States v. Eyster*, 386 F. App'x 180, 183 (3d Cir. 2010), the Third Circuit had "no difficulty in concluding that [the defendant's] sentence [of 840 months] is reasonable," where the defendant was convicted of one count of production of child pornography and one count of possession. Again, in *United States v. Mazer*, 604 F. App'x 126 (3d Cir. 2015), the Third Circuit affirmed a statutory maximum sentence of 720-months for two counts of production of child

pornography based upon the defendant's recorded images of his sexual abuse of two children under the age of three that occurred in December 2011.

Reed's repeated criminal conduct, with multiple little girls ages 9-13 years old, is, at the very least, similar to the conduct of the defendants in *Curran*, *Christie, Eyster and Mazer*, cases that were approved by the Third Circuit, and, in most instances, Reed's conduct was substantially more serious.  Therefore, a sentence of 1,080 months or 90 years should be imposed; any sentence less severe would create an unwarranted disparity.

## F. Lifetime Supervised Release is Reasonable and Appropriate

To the extent this Court considers a sentence of a term of years that is less than Life, it should impose a term of supervised release that extends for the life of Reed. "Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is not a punishment in lieu of incarceration. *See United States v. Granderson*, 511 U.S. 39, 50 (1994). If being on supervised release were the punitive equivalent of being in prison, and if it served the just desserts function, there would

35

be no need to put most criminals in prison. *See Irey*, 612 F.3d at 1210.

The life term recommendation contained in Section 5D1.2(b) reflects

powerful evidence indicating that recidivism rates for sex offenders do

not appreciably decline as offenders age. *See* H.R. Rep. No. 107-527, at

2 (2002) (discussing the merits of a life term of supervised release for

sexual offenders). Because, in sex crimes cases, there is no reason to

believe that the need for supervision inherently decreases with time,

Congress found lifetime supervised release to be appropriate, and thus

directly inserted such a recommendation into the Guidelines. *See id.*

More specifically, the passage of 18 U.S.C. § 3583(k) recognized the

long-standing concerns of federal judges and prosecutors regarding the

inadequacy of the existing supervision periods for sex offenders,

particularly for the perpetrators of child sexual abuse crimes, whose

criminal conduct may reflect deep-seated aberrant sexual disorders that

are not likely to disappear within a few years of release from prison.

Many of these offenders need long term or lifetime monitoring and

oversight.  *See* H.R. Conf. Rep. No. 108-66, at 49-50 (2003), *reprinted in*

2003 U.S.C.C.A.N. 683, 684.

Courts have routinely affirmed lifetime supervised release for criminal conduct. *See United States v. Ortega*, 485 Fed. App'x. 656, 659 (5th Cir. 2012) (lifetime supervised release appropriate when defendant used the internet to induce a minor to engage in sexual activity); *United States v. Antone*, 375 Fed. App'x. 752, 753 (9th Cir. 2010) (affirming lifetime supervised release following convictions for Title 18 U.S.C. §§ 2243(a), 2246(c), and 1153(a)). A term of supervised release for life is reasonable and appropriate in this case to achieve rehabilitative ends and to protect children from further victimization.

## G. Conclusion

When the Court considers all of the factors enumerated in 18 U.S.C. § 3553(a), a sentence of 90 years is the only reasonable and appropriate sentence for this defendant.  Reed is a predator.  He preyed on young girls he lived with and their friends, bribing them with gifts and money.  After plying them with these gifts, he raped them, molested them and photographed their naked genitals, producing child pornography.

The lives of these young girls forever changed in the most profound ways; at the very least, Reed's life should be behind bars

forever, where these victims and other children cannot be further harmed by him. Just as importantly, he should be behind bars to simply give these victims the comfort and peace of mind of knowing that they never have to look over their shoulders to find Reed there watching them.

The sentence requested by the United States is reasonable given the defendant's criminal conduct. Moreover, it will promote respect for the law and protect the public from future crimes of the defendant; serve to generally deter the behavior exemplified by the defendant; and avoid unwarranted sentencing disparities among similarly situated defendants.

David J. Freed
United States Attorney

By:   /s/ Meredith A. Taylor
MEREDITH A. TAYLOR
Assistant United States Attorney
228 Walnut Street, P.O. Box 11754
Harrisburg, PA 17108
717/221-4482 (Office)
717/221-2246(Fax)
E-mail: meredith.taylor@usdoj.gov
BAR NO. PA 205058

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 1:15-CR-193 |
| | ) | |
| v. | ) | (Judge Kane) |
| | ) | |
| JAY EUGENE REED | ) | |
| | ) | |
| | ) | (Electronically Filed) |
| Defendant. | ) | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the

Office of the United States Attorney for the Middle District of

Pennsylvania and is a person of such age and discretion to be competent

to serve papers.

That this 29th day of October 2018, she served a copy of the
attached

UNITED STATES' SENTENCING MEMORANDUM

by electronic means by sending a copy to the e-mail addressees stated
below:
Thomas Thornton, Esquire
Thomas_Thornton@fd.org

Rebekah Billings, Probation Officer
Rebekah_Billings@pamp.uscourts.gov

/s/ Meredith A. Taylor
Meredith A. Taylor
Assistant U.S. Attorney