IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | ) CASE NO. 1:15-CR-00193-WWC |
| vs. | ) |
| JAY EUGENE REED, Defendant | ) |

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE THE HONORABLE WILLIAM W. CALDWELL
UNITED STATES DISTRICT JUDGE
2 FEBRUARY 2017 - 2:42 P.M.

APPEARANCES:

**For the Government**:

Meredith A. Taylor, Esq., AUSA
U.S. Attorney's Office
Federal Building, 2nd Floor
228 Walnut Street
Harrisburg, PA 17108
(717) 221-4482

**For the Defendant**:

Thomas A. Thornton, Esq., AFPD
Federal Public Defender's Office
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
(717) 782-2237

**Court Reporter**:

Wesley J. Armstrong, RMR
Official Court Reporter
U.S. Courthouse & Federal Building
228 Walnut Street
Harrisburg, PA 17101
(717) 542-5569

Proceedings recorded by machine shorthand; transcript produced by computer aided transcription.

P R O C E E D I N G S

THE COURT: Good afternoon.

MR. THORNTON: Good afternoon, Your Honor.

MS. TAYLOR: Good afternoon.

THE COURT: Ms. Taylor?

MS. TAYLOR: This is the case of United States of America versus Jay Eugene Reed, this court's docket 1:15-CR-193. Mr. Reed is present represented by Mr. Thornton. This is the time and date set for a guilty plea in this matter. Mr. Reed is pleading guilty to the four counts that are listed in the indictment that was filed against him.

THE COURT: Are they numbered, the counts?

MS. TAYLOR: Yes, sir.

THE COURT: 1 through 4?

MS. TAYLOR: Yes, sir.

THE COURT: Okay. And I understand that there's no plea agreement here.

MS. TAYLOR: That's correct, Your Honor.

THE COURT: Okay. Good afternoon, Mr. Thornton.

MR. THORNTON: Good afternoon, Your Honor.

THE COURT: Mr. Reed, good afternoon.

THE DEFENDANT: Good afternoon.

THE COURT: Before I can accept your plea I must be satisfied you're aware of the rights that you have in connection with this case. I'm going ask you some questions.

I want you to respond under oath and I'll ask that you be sworn to testify at this time.

(The defendant was sworn by the courtroom deputy.)

EXAMINATION BY THE COURT:

**Q.** Mr. Reed, how old are you, sir?
**A.** 56.
**Q.** And what's the extent of your education?
**A.** Twelfth grade.
**Q.** Okay. Have you worked?
**A.** Yes, sir.
**Q.** What have you done?
**A.** I have done all types of work all my life. Ever since I was in high school I worked.
**Q.** Manual labor?
**A.** Yes, sir, manual labor, drove trucks. I built houses, drove trucks, all kinds of other odds and ends stuff.
**Q.** You've had a lot of experiences I'm sure.
**A.** Yes.
**Q.** Have you received the indictment?
**A.** Yes, sir.
**Q.** Did you read it?
**A.** Yes, sir.
**Q.** Did you understand it?
**A.** Yes, sir.
**Q.** Okay. Have you consulted with Mr. Thornton about it?

**A.** Yes, sir.

(Brief pause.)

THE COURT: Is this case listed for trial?

MR. THORNTON: Yes, it is, Your Honor. I believe it's listed for February 6th.

THE DEFENDANT: February 6th, yes.

MR. THORNTON: February 6th, Your Honor.

BY THE COURT:

**Q.** Your case is currently listed for a jury trial on February 6th, and if you didn't wish to plead this afternoon you could go to trial before a jury and you couldn't be convicted in that trial unless all twelve jurors that heard the evidence would find you guilty. Do you understand that option?

**A.** Yes, sir.

**Q.** If you elected to go to trial the government would have to confront you here in court with its witnesses and evidence. You would have the right, through counsel, to cross examine any of the government's witnesses. Do you understand that as well?

**A.** Yes, sir.

**Q.** If you went to trial you would be presumed to be innocent until such time as the government established to the satisfaction of the jury your guilt by competent evidence beyond a reasonable doubt. Do you understand that?

**A.** Yes, sir.

**Q.** Had you elected to go to trial you could compel witnesses

to come to court to testify to anything that might help your defense. Do you understand that?

**A.** Yes.

**Q.** If you went to trial. Mr. Thornton would represent you if you wanted to go to trial. Do you understand that?

**A.** Yes, sir.

THE COURT: Do you know what the penalties are for this offense and would you repeat them, please?

MS. TAYLOR: Yes, Your Honor. In the indictment that's filed against Mr. Reed, in Count 1 of the indictment he is charged with production of child pornography, in violation of 18 United States Code 2251(a). That does carry up to thirty years imprisonment, a mandatory minimum fifteen years, a $250,000 fine, up to a lifetime of supervised release, a $100 special assessment, and a $5,000 assessment.

THE COURT: Okay.

MS. TAYLOR: Count 2 does charge him with possession of child pornography, in violation of 18 United States Code 2252(a), sub (A)(5)(B). And that carries up to twenty years imprisonment, a $250,000 fine, up to a lifetime of supervised release, a $100 special assessment, and a $5,000 assessment.

THE COURT: All right.

MS. TAYLOR: Your Honor, both Counts 3 and 4 are charges of tampering with witnesses and victims, in violation of Title 18 United States Code 1512(b)(3), and for both those

counts the punishment is up to twenty years imprisonment, a $250,000 fine, not more than three years of supervised release, and a $100 special assessment. That will be for Counts 3 and 4.

THE COURT: Okay. Am I correct that the mandatory minimum for possession is more than the mandatory minimum for production?

MS. TAYLOR: For Count 2, Your Honor, possession, there's actually not a mandatory minimum.

THE COURT: Oh, I thought that's what you said.

MS. TAYLOR: If I did, Your Honor, I misspoke. The only mandatory minimum for Count 1 is fifteen years for production.

THE COURT: All right. What's the penalty on Count 2?

MS. TAYLOR: Up to a maximum of twenty years imprisonment.

THE COURT: Maybe that's what I heard you say mistakenly. I thought you said mandatory. Okay.

(Brief pause.)

THE COURT: Mr. Thornton, do you have anything that you want to bring to the attention of court at this time?

MR. THORNTON: No, Your Honor. We do -- I know that it's common practice to have Ms. Taylor explain the facts behind the charges. We do have some difficulties with the facts as Ms. Taylor will explain because Mr. Reed is still

facing prosecution in the state for some of the underlying conduct here.

THE COURT: All right. Do you want to go ahead and outline the case?

MS. TAYLOR: Your Honor, if this case went to trial the government would prove beyond a reasonable doubt the following. The defendant moved in with Deborah Bowman, who is the grandmother of two of the victims, in about 2013. He lived with Ms. Bowman, her daughter Jamie, and Jamie's two minor daughters, who were ages 13 and 9, who for the purposes of this hearing I'll refer to as JD-1 and JD-2, on Star Road in Three Springs, Pennsylvania.

One of Ms. Bowman's granddaughter's friends, who was aged 13 at the time, and I'll refer to her as JD-3, she disclosed to the Pennsylvania State Police that the defendant had been molesting her from January through June of 2015 at the Star Road home when she would visit her friend JD-1. JD-3 said Mr. Reed would buy the girls things and give them money.

He told her to lie about what was happening, and if she told anyone she would no longer be able to see her friend JD-1. During the investigation several minor juvenile victims were interviewed at the Centre County Children's Advocacy Center, including JD-1, age 13. She disclosed to the forensic interviewer that the defendant would molest her by touching her breasts, vagina, and butt, and that he performed oral sex on

her. JD-1 also told the interviewer that she was aware that the defendant had taken photographs of her. JD-2, who was aged 9, told the forensic interviewer that the defendant vaginally, anally, and digitally penetrated her, and that he performed oral sex on her.

THE COURT: Did you say she's 89 years old?

MS. TAYLOR: She's age 9.

THE COURT: Okay, age 9. Okay. Maybe there's something wrong with my hearing here today. Okay.

MS. TAYLOR: She explained that he showed she, the 9-year-old, and the other girls pornographic videos. She told the forensic interviewer that she observed JD-4 performing oral sex on the defendant, and the defendant made JD-2, who was 9, perform oral sex on him. JD-2 stated he would threaten not to give her any more presents if she refused.

JD-2 told the forensic interviewer that she saw naked pictures of JD-1, the 13-year-old, on Mr. Reed's phone. JD-4, who was aged 10, disclosed that the defendant digitally penetrated her vagina when she was speaking with the forensic interviewer. She also stated that he attempted vaginal penetration, that he performed anal penetration. She described that this penetration was painful and stated that the defendant showed her pictures of JD-1's vagina on his phone.

On July 9th, 2015 the Pennsylvania State Police executed a search warrant at the Star Road home in Three

Springs, Pennsylvania and recovered several cell phones, a router, a desktop computer known to be used by the defendant, and a digital camera. On that same date, July 9th, 2015, Jay Reed was arrested by state police troopers. When they searched him incident to arrest they found condoms, a Samsung cell phone, photographs, and a ScanDisk four gigabyte micro SD card with an adapter in his pocket.

On July 15th, 2015, after obtaining a search warrant for the defendant's vehicle that had remained at his work place, the state police towed it, and on July 16th 2015 they searched that vehicle. They seized twenty-nine DVD's, and MP-4 player, a small amount of marijuana, and another nine to ten DVD's from the trunk.

At that point the FBI became involved. FBI Special Agent Clint Vicara assisted the state police with a forensic examination of the defendant's cell phone. They located two hundred images on it which showed a lascivious display of the genitals of three of the victims in this case, JD-2, who was aged 9; JD-4, who was aged 10; and JD-1 aged 13. In these images these minor girls are naked with their legs spread and many of them displaying their vaginas, and there are close-ups of the victims' vaginas.

There are a number of images where the defendant's hands and fingers are visible touching on and around the victims' vaginas. In some of the images Mr. Reed placed a

temporary tattoo of a bunch of cherries in the pubic region of JD-2, the 9-year-old minor victim, just above her vagina. The earliest creation date on the digital images is May 31st, 2014.

When the state police began their analysis of the defendant's desktop computer looking for pictures of the victims they found eight pictures of commercially downloaded child pornography. At that point they stopped and got a second search warrant authorizing them to search not just for images of the known victims, but for child pornography generally.

On the computer seized from Mr. Reed's possession law enforcement located approximately three hundred images of child pornography as defined in Title 18 of the United States Code 3156, including an image of a prepubescent female lying on her back, nude, being penetrated by the penis of an adult male, a second image of a preteen female lying totally nude on top of a table, bound to the table with rope, blindfolded, with her legs spread open, and a third image of a prepubescent sent female lying on her back displaying her vagina and breasts.

That's just a sample description of the images found on the computer. Agent Vicara submitted the images of child pornography to the National Center for Missing and Exploited Children for possible identification, and twenty-two images were identified as victims known to NCMEC.

When the defendant was initially arrested by the state police he was charged with rape of a child, putting hands

on contact offenses with the known minors, and housed in Centre County prison. While in Centre County prison Mr. Reed sent a letter to Deborah Bowman and a separate letter to JD-1, who was 13 years old at the time, and both letters were postmarked July 15th -- I'm sorry, July 25th, 2015. Jamie, the mother of JD-1 and JD-2, intercepted the letter addressed to minor JD-1 and provided the letter to the state police.

In the letter to Ms. Bowman the defendant wrote, "I don't remember where you said you were taking the girls to. Why do they have to go? They already gave statements. Don't volunteer anything extra. They will try to trick them into saying something that will hurt me."

In the letter to JD-1 the defendant writes, "I hope you and," and he actually uses the child's actual name, but for the purposes of today I'm using JD-2, "I hope you and [JD-2] are not talking to anyone about this case." Mr. Reed also made at least one phone call to the home and spoke with the victim's mother Jamie and told her not to take the girls to the Children's Advocacy Center so they would not be able to tell what happened.

These letters are the basis for Count 3 and Count 4, both which charge tampering with witnesses and victims. Your Honor, essentially if this case went to trial these would be the facts that would be proven beyond a reasonable doubt.

THE COURT: Okay. Mr. Thornton, is this your

understanding of the facts?

MR. THORNTON: To some extent, Your Honor, these the facts, specifically the facts about the touching of any of the girls, the molesting, the touching of breasts and vaginas and things like that are the subject of charges in Centre County for which Mr. Reed is still waiting to be brought to trial, so we cannot agree to any of those facts at all, though that's not what's charged in the indictment here because the only thing that's charged -- well, the four things that are charged in the indictment are two counts of obstruction with which we have no quarrel with the facts read by Ms. Taylor. Count 1 in this case refers to the photographs that were taken of the girls, not the actual touching of them, not the --

THE COURT: The production?

MR. THORNTON: The production of the photographs. Those photographs were never distributed in any way. They were only found on Mr. Reed's phone and on his scan disk. But we do agree -- and, Mr. Reed, tell me if I'm right here -- we do agree that you knowingly and intentionally persuaded, induced, or enticed a minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Is that right, Mr. Reed?

THE DEFENDANT: Yes.

MR. THORNTON: For Count 2, Your Honor, we do agree that Mr. Reed possessed those pictures and that the computer

that was found in a shed behind their house also belonged to Mr. Reed, and Count 2 requires that he knowingly possessed and caused to be possessed images of child pornography depicting minors engaged in sexually explicit conduct, including prepubescent minors or minors who had not attained the age of 12 that had been shipped in interstate commerce. Do you also agree with that? You plead guilty to that charge?

THE DEFENDANT: Yes.

MR. THORNTON: And as far as Charge 3, which is the letter that you wrote to JD-3, did you corruptly, knowingly and corruptly persuade and attempt to persuade her not to speak to the grand jury, which would hinder and delay her, delay the prosecution?

THE DEFENDANT: Yes.

MR. THORNTON: And with Count 4, did you do the same with Jane Doe Number 1, where you hindered and delayed the prosecution by indicating to them that you would hope that she would not talk to anyone about the case?

THE DEFENDANT: Yes.

MR. THORNTON: So, Your Honor, we do admit to the charges in the indictment, but we don't admit to all the other claims.

THE COURT: I understand that. Sure.

BY THE COURT:

**Q.** Mr. Reed, subject to what Mr. Thornton has said do you

basically agree with what the prosecutor has told me?

**A.** Yes, sir.

**Q.** Okay. Other than -- you don't have a plea agreement, do you? Has anybody threatened you in any way to bring you to the decision to plead guilty here this afternoon?

**A.** No, sir.

**Q.** I'll ask you then, sir, how you plead to Counts 1, 2, 3, and 4 in this indictment, guilty or not guilty?

**A.** Guilty, Your Honor.

THE COURT: Thank you. I believe Mr. Reed has made a voluntary and an informed decision, which we accept. We'll request the preparation of a presentence report, ask it that be disclosed by March 30th of this year, and we will then set a date for sentencing and any other proceedings that might be indicated. Anything further, Ms. Taylor?

MS. TAYLOR: No, Your Honor, not from the government.

THE COURT: Mr. Thornton?

MR. THORNTON: Not on behalf of Mr. Reed, Your Honor.

THE COURT: All right. Thank you, Mr. Reed. We will adjourn at this time.

THE DEFENDANT: Thank you, sir.

(Hearing concluded at 3:03 p.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**USA vs. Jay Eugene Reed**

**1:15-CR-00193-WWC**

**Change of Plea Hearing**

**2 February 2017**

I, Wesley J. Armstrong, Federal Official Court Reporter, in and for the United States District Court for the Middle District of Pennsylvania, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 11th day of December 2018

**/s/ Wesley J. Armstrong**

______________________________

**Wesley J. Armstrong**

**Registered Merit Reporter**