IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAY EUGENE REED, | : | |
| Petitioner | : | No. 1:15-cr-00193-1 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |

**MEMORANDUM**

Before the Court is Petitioner Jay Eugene Reed ("Petitioner")'s motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 85.) For the reasons that follow, the Court will deny Petitioner's motion.

**I.   BACKGROUND**

On September 9, 2015, a grand jury returned a four-count indictment charging Petitioner with one count of production of child pornography in violation of 18 U.S.C. § 2251(a), one count of possessing child pornography involving minors under the age of twelve in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2), and two counts of witness tampering in violation of 18 U.S.C. § 1512(b)(3). (Doc. No. 1.) On January 20, 2017, represented by his then-counsel, Federal Public Defender Thomas A. Thornton, Esq. ("Plea Counsel"), Petitioner filed a Notice of Intent to Plead Guilty without a Plea Agreement. (Doc. No. 41.) He appeared on February 2, 2017, for a change of plea hearing before former United States District Judge William W. Caldwell and pleaded guilty to all four counts in the indictment. (Doc. Nos. 44-45, 81.) Before he pleaded guilty, the prosecution read into the record the facts that the Government intended to present at trial, and Petitioner agreed that he had, <u>inter alia</u>, "knowingly and intentionally persuaded, induced, or enticed a minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." (Doc. No. 81 at 12.) Judge Caldwell accepted the guilty

plea upon concluding that Petitioner entered a voluntary and informed plea that was supported by an independent basis in fact. (Id.)

Petitioner appeared before the undersigned for sentencing on October 30, 2018. (Doc. No. 82.) The Court noted that Petitioner had a total offense level of 46 and fell within a criminal history category of I, resulting in a Sentencing Guidelines range of life in prison, although his sentence was statutorily capped at an aggregate term of 1,080 months' imprisonment. (Id. at 3, 65; Doc. No. 73.) Before imposing a sentence, the Court heard testimony from a psychiatrist, Dr. Joseph Silverman, who had evaluated Petitioner prior to sentencing. (Doc. No. 82 at 20.) Plea Counsel successfully argued in favor of a downward variance, and the Court sentenced Petitioner to an aggregate term of 840 months' imprisonment. (Id. at 60, 73-74.) Judgment was entered the same day. (Doc. No. 75.)

On November 13, 2018, Petitioner filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit. (Doc. No. 76.) He raised two arguments, both rejected by the Third Circuit. See United States v. Reed, 796 F. App'x 119, 121-23 (3d Cir. 2019). Petitioner's first contention was that the Court "committed procedural error by improperly dismissing" the psychiatric testimony of his evaluating psychiatrist, Dr. Silverman, under the standard enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See id. at 122. As to this contention, the Third Circuit acknowledged that at sentencing, the Court properly considered Dr. Silverman's testimony, which the Court noted was "very important" to the Court's "weigh[ing] [of] the willfulness of what [Petitioner] has done." See id.[1] The Third Circuit concluded that the

---

[1] While the Court did state that if Dr. Silverman "[w]ere here on a Daubert motion, [it] would likely reject the conclusions that he[] offered to the [C]ourt," the Third Circuit acknowledged that the "Court's passing reference to Daubert d[id] not indicate that it was evaluating the admissibility of the testimony under Federal Rule of Evidence 702." See id. (alterations in original) (internal quotation marks omitted) (quoting the record below).

Court followed the applicable three-step process when sentencing Petitioner, adhered to its obligations under 18 U.S.C. § 3553(a), and addressed Plea Counsel's "arguments raised about Petitioner's age, health, and lack of criminal history, weighed those factors against the severity of the crime, and ultimately decided to impose a higher sentence." See id.

As to Petitioner's second basis for appealing his judgment to the Third Circuit, he argued that "his 840-month sentence is substantively unreasonable" and "should be closer to the statutory minimum" of 15 years' imprisonment given "his age, health issues, and minimal criminal history . . . ." See id. The Third Circuit rejected this contention given "the nature and severity" of his crimes and the "below-guidelines sentence length . . . ." See id. at 123. The Third Circuit found no abuse of discretion as to the manner and severity of the sentence that the Court crafted. See id. Petitioner filed a petition for a writ of certiorari with the United States Supreme Court, and the Supreme Court denied his petition on April 20, 2020. See Reed v. United States, 140 S. Ct. 2703 (2020).

On April 15, 2021, Petitioner, acting pro se, filed the pending motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, along with a brief in support of his motion. (Doc. Nos. 85-86.) Petitioner's § 2255 motion raises four grounds for relief on the basis of ineffective assistance of counsel. (Id.) Specifically, Petitioner asserts the following claims:

Ground One: Plea Counsel's ineffective assistance at sentencing resulted in a substantively unreasonable sentence of 840 months' imprisonment.

Ground Two: Plea Counsel (1) misadvised Petitioner that the Court would impose a sentence no greater than 15 years' imprisonment and (2) failed to inform Petitioner about the possible outcome of a jury trial.

Ground Three: Plea Counsel failed to argue that the indictment was defective.

Ground Four: Plea Counsel failed to prevent the disclosure of an unfavorable expert report generated by a psychologist whose report Dr. Silverman had reviewed prior to testifying at sentencing.

(Doc. Nos. 85 at 4-10, 86 at 1, 5-6, 21.)

The Clerk of Court received Petitioner's motion on April 15, 2021. (Doc. No. 85.) Six days later, the Court issue an Administrative Order directing Petitioner to file a Notice of Election indicating whether he wished to proceed on his § 2255 as filed notwithstanding the limitations on the filing of § 2255 motions. (Doc. No. 88.) Petitioner filed a Notice of Election on May 13, 2021, indicating that he wished to proceed on his § 2255 motion as filed. (Doc. No. 90.) On May 17, 2021, the Court directed the Clerk of Court to serve a copy of Petitioner's motion on the United States Attorney for the Middle District of Pennsylvania. (Doc. No. 91.) The Court also set a briefing schedule (id.), pursuant to which the Government filed a brief in opposition to the § 2255 motion on June 7, 2021 (Doc. No. 92). After being granted an extension of time to do so (Doc. Nos. 93-94), Petitioner filed a reply brief on August 16, 2021 (Doc. No. 95). Accordingly, Petitioner's motion is ripe for disposition.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). However, § 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing. See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing United States v. Addonizio, 442 U.S. 178, 185 (1979)). Rather, § 2255 is implicated only when the alleged error raises "a fundamental defect which inherently results in a complete miscarriage of justice." See Addonizio, 442 U.S. at 185. Under the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to file a § 2255 motion.  See 28 U.S.C. § 2244.

To establish entitlement to relief, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).  The first Strickland prong requires Petitioner to "establish first that [Plea Counsel]'s performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong requires Petitioner to show that Plea Counsel made errors "so serious" that Plea Counsel was not functioning as guaranteed under the Sixth Amendment.  See id.  To that end, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  See id. (citing Strickland, 466 U.S. at 688).  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable."  See id.  Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  See id.  This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. (quoting Strickland, 466 U.S. at 694).  Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  See id. (quoting Strickland, 466 U.S. at 694).

### III.   DISCUSSION

As indicated, supra, Petitioner asserts four claims of alleged ineffective assistance, each of which the Court addresses in turn below.  Following its discussion of Petitioner's claims, the Court will consider whether an evidentiary hearing or certificate of appealability is warranted in this case.

As a preliminary matter, however, the Court must address Petitioner's request that the undersigned recuse from this action. Petitioner contends that the undersigned exhibited "the appearance of bias" by "rejecti[ng] [] Dr. Silverman's report and his expert testimony" and "taking . . . the role of psychiatrist in giving a scientific opinion as rebuttal to Dr. Silverman's expert testimony . . . ." (Doc. No. 86 at 27.) Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." See id. "Section 455 'mandates an objective rather than a subjective inquiry,' so that an 'appearance of partiality' alone suffices to require recusal." See Pickard v. United States, 170 F. App'x 243, 245 (3d Cir. 2006) (quoting United States v. Antar, 53 F.3d 568, 574-76 (3d Cir. 1995)). "Under this standard, a judge must disqualify himself if 'an objective observer reasonably might question the judge's impartiality.'" Id. (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)). "The proper inquiry is not whether the moving party subjectively believes the judge has some preconceived bias or prejudice, but rather whether a reasonable person, knowing all of the facts and circumstances, would harbor doubts concerning the judge's impartiality." See United States v. Mollica, No. 3:06-cr-297, 2009 WL 10718118, at *1 (M.D. Pa. Aug. 13, 2009) (internal quotation marks omitted).

Here, the undersigned was in no way biased during any of Petitioner's criminal proceedings and has considered his § 2255 motion in a wholly impartial and unbiased manner. To the extent Petitioner argues that the undersigned's role in presiding over his sentencing alone warrants recusal, that "theory [] is irreconcilable with Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which specifically provides for a § 2255 motion to be assigned to the judge who . . . imposed sentence." See In re Burnett, 537 F. App'x

30, 31 (3d Cir. 2013) (internal quotation marks omitted). Further, in Petitioner's appeal, the Third Circuit expressly held that the undersigned did not improperly discount Dr. Silverman's testimony or apply the wrong standard in evaluating it, and a "party's displeasure with legal rulings does not form an adequate basis for recusal." See Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000). The fact that Petitioner's "criminal matter may have caused [the undersigned] to develop some opinions as to the merits of [§ 2255 claims] does not require [] recusal." See In re Burnett, 537 F. App'x at 32.[2] In sum, the undersigned held no bias toward any party or expert during sentencing, Petitioner's motion is properly before the undersigned, the mere fact that the undersigned presided over his sentencing is insufficient to warrant recusal, and the Third Circuit acknowledged that the Court properly considered and weighed Dr. Silverman's testimony. Accordingly, recusal is not warranted.

### A. Ground One: Ineffective Assistance Resulting in a Substantively Unreasonable Sentence

In Ground One of his motion, Petitioner asserts that Plea Counsel provided ineffective assistance at sentencing, resulting in a substantively unreasonable sentence of 840 months' imprisonment. (Doc. No. 86 at 1-4.) Petitioner argues that the Court imposed a "substantively unreasonable sentence because, when selecting a sentence, it gave unreasonable weight to a manifestly unjust Guidelines range that placed him in the group of the very worst offenders deserving a life sentence." (Id. at 3.) He submits that because "any sentence longer than about 30 years would effe[c]tively be a life sentence for him," his current sentence of 840 months' (or 70 years) imprisonment is substantively unreasonable. (Id.) He relies on child pornography

---

[2] See also Rule 4 advisory committee's note (1976) (noting that "[b]ecause the trial judge is thoroughly familiar with the case, there is obvious administrative advantage in giving him the first opportunity to decide whether there are grounds for granting the [§ 2255] motion").

7

cases from other circuits in which courts concluded that the defendants' sentences were substantively unreasonable when compared to sentences in more egregious cases, creating unwarranted sentencing disparities. (Id. at 4.) He similarly points to cases involving molestation of children and child pornography in which the defendants received lesser sentences. (Id.) From these cases, Petitioner argues that his "sentence of 70 years is plainly disproportionate." (Id.)

Having reviewed Petitioner's arguments and the case law upon which he relies, the Court finds Ground One of his § 2255 motion unavailing. Concerning the first Strickland prong, Ground One challenges the reasonableness of the sentence imposed by the Court but makes no reference to the ways in which Plea Counsel was deficient in that regard. While Petitioner's other grounds for seeking relief under § 2255 allege purported failures of Plea Counsel, see infra, Ground One simply does not. To the extent Petitioner is now arguing that Plea Counsel should have filed a post-sentence motion challenging the substantive reasonableness of his sentence, that argument has no traction because the Third Circuit, in deciding his appeal, unequivocally concluded that the Court imposed a substantively reasonable sentence, and Plea Counsel "cannot be deemed ineffective for failing to raise a meritless claim." See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000). Petitioner has therefore failed to establish that Plea Counsel's representation fell below an objective standard of reasonableness under prevailing professional norms under the first prong of Strickland. Accordingly, with regard to his "substantively unreasonable sentence" argument, the Court finds that Petitioner has not demonstrated an entitlement to relief on Ground One of his motion.

> **B.    Ground Two: Ineffective Assistance Resulting in an Unknowing and Involuntary Plea**

Turning to Ground Two of his motion, Petitioner argues that Plea Counsel misadvised him that his sentence would fall below 15 years' imprisonment and failed to advise him of the

8

possible outcome of a jury trial. (Doc. No. 85 at 15.) He does not expand upon the factual basis for this argument in his brief in support or reply brief. In his brief in support, Petitioner cites to various cases for general propositions, including that a defendant can maintain a claim of ineffective assistance by showing that his or her counsel's advice to plead guilty fell outside "the range of competence demanded of attorneys in criminal cases." (Id. at 5) (internal quotation marks omitted) (quoting Tollett v. Henderson, 411 U.S. 258, 264 (1973)). Petitioner further notes that "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." See Tollett, 411 U.S. at 266; (Doc. No. 85 at 5). In his reply brief, Petitioner reiterates his averment that Plea Counsel misadvised him about the sentence he faced but does not include any other additional factual assertions. (Doc. No. 95 at 2.)

Petitioner's Ground Two does not satisfy the second Strickland prong, regardless of whether it satisfies the first prong. "[T]o satisfy the second, or 'prejudice,' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Hill, 474 U.S. at 52 (affirming the denial of a § 2255 claim without an evidentiary hearing where the defendant did not allege that he would have insisted on going to trial but for counsel's errors). Here, Petitioner "does not allege that he would not have pleaded guilty and would have insisted on going to trial had [Plea Counsel] acted differently." See United States v. Gartz, No. 07-cv-1436, 2009 WL 3664989, at *6 (W.D. Pa. Nov. 4, 2009). Further, nowhere in the correspondence between Petitioner and Plea Counsel—which Petitioner argues demonstrates Plea Counsel's confusion and misunderstanding about Petitioner's probable sentence (Doc. Nos. 86 at 26, 95 at 1-2)—does Petitioner assert that Plea Counsel misadvised him about his sentencing exposure or

failed to provide a prediction about the outcome of a jury trial (Doc. No. 86 at 50-82). Petitioner has therefore failed to establish prejudice under the second Strickland prong. See id.; see also, e.g., United States v. Jones, No. 12-cv-2046, 2014 WL 2587008, at *6 (E.D. Pa. June 10, 2014) (summarily denying a § 2255 claim without an evidentiary hearing where the defendant "d[id] not allege that had he known he could receive a consecutive sentence . . . , he would not have pleaded guilty to the firearm charge"). Accordingly, the Court concludes that Petitioner has not demonstrated an entitlement to relief on Ground Two of his motion.

      **C.    Ground Three: Ineffective Assistance for Failing to Argue that Petitioner Was Charged in a Defective Indictment**

As to Ground Three of his motion, Petitioner contends that Plea Counsel was ineffective for failing to argue that the indictment was defective as to the first two counts charged in the indictment (production and possession of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(5)(B), (b)(2)). (Doc. No. 86 at 6-21.) Petitioner submits that the indictment lacks allegations supporting the Government's contention that he committed the offenses in those counts, and that the grand jury would not have found probable cause to charge him with the offenses if the indictment was adequate. (Id. at 6-7.) According to Petitioner, "there is not an adequate description of when and where the alleged offenses took place, and the 'time frame' broadly 'spans a period of two months.'" (Id. at 7.) He maintains that the indictment did not apprise him of the nature of the accusations against him, that "there are no facts to indicate the requisite mens rea . . . or the specific acts that he allegedly committed and 'the manner in which it is alleged that he' committed them," and that the indictment does not describe the sexually explicit conduct and fails to provide a factual basis "for the interstate of foreign commerce nexus." (Id.)

This third ground advanced in Petitioner's § 2255 motion fails under the first Strickland

prong because Plea Counsel cannot be faulted for failing to raise a meritless argument, see Werts, 228 F.3d at 203, and the contention that the indictment was defective is meritless. Concerning the requirements of an indictment, Federal Rule of Criminal Procedure 7(c)(1) provides, in relevant part, as follows:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

See Fed. R. Crim. P. 7(c)(1).

"The specificity required for an indictment to have sufficient factual orientation . . . is not particularly onerous." See United States v. John-Baptiste, 747 F.3d 186, 195 (3d Cir. 2014). An "indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." See United States v. Advantage Med. Transp., Inc., 751 F. App'x 258, 262 (3d Cir. 2018) (quoting United States v. Stevenson, 832 F.3d 412, 423 (3d Cir. 2016)). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." See id. (quoting United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012)). "Accordingly, an indictment should be upheld 'unless it is so defective that it does not, by any reasonable construction, charge an offense.'" See id. (quoting United States v. Willis, 844 F.3d 155, 162 (3d Cir. 2016)).

Applying the above standards here, the Court discerns no defects in the indictment. It contains all of the elements of the offenses charged, sets forth the dates on or during which Petitioner's criminal conduct occurred, and provided ample notice to Petitioner of what he must have been prepared to meet. "Additionally, because the indictment virtually tracked the statute[s] verbatim, it sufficiently enabled [Petitioner] to avoid subsequent prosecution on double jeopardy grounds." See United States v. Stevens, No. 02-cr-0704, 2002 WL 31111779, at *6 (E.D. Pa. Sept. 19, 2002); see also United States v. Stock, 728 F.3d 287, 292 (3d Cir. 2013) (stating that "a factual orientation that includes a specification of the time period of the alleged offense is sufficient for the second and third requirements," and "'detailed allegations' are unnecessary").[3] As such, the Court finds that Petitioner has not demonstrated an entitlement to relief on Ground Three of his motion.

### D.  Ground Four:  Disclosure of Expert Evaluation and Consideration of Expert Testimony and Opinions at Sentencing

Ground Four of Petitioner's motion concerns expert opinions and testimony presented at sentencing. Petitioner argues that Plea Counsel was ineffective for disclosing the November 9, 2016 preliminary evaluation of a psychologist, Dr. Franklin M. Dattilio (the "Dattilio Report" or "Report"), who determined that Petitioner is a pedophile. (Doc. No. 86 at 21.) Petitioner asserts that the Dattilio Report was never meant to be used at trial, and that Plea Counsel was ineffective for disclosing it to the Dr. Silverman (id.), who, as the Court noted, see supra, testified on Petitioner's behalf at sentencing and concluded that Petitioner should not be incarcerated. Petitioner similarly contends that although the Dattilio Report "was not going to be finalized and

---

[3] Moreover, contrary to Petitioner's contention (Doc. No. 86 at 19), the indictment, by charging both Count One and Count Two, does not on its face violate his double jeopardy rights because each count "requires proof of a fact which the other does not." See Blockburger v. United States, 284 U.S. 299, 304 (1932).

Dr. Dattilio was not going to testify at trial," Plea Counsel subsequently provided it to Dr. Silverman, rendering the Report discoverable by the Government under Federal Rule of Criminal Procedure 16(b)(1)(B)(ii).[4]  (Id. at 21-22.)  Petitioner submits that the Dattilio Report contains unfavorable information that the Government used to cross-examine Dr. Silverman, resulting in testimony that "cast doubt on Dr. Silverman's conclusions."  (Id. at 22.)  He contends that Dr. Silverman's psychological evaluation and testing revealed that Petitioner "was laboring under the burden of a brain dysfunction at the time of the offense, a conclusion which Dr. Dattilio never explored."  (Id.)

Upon careful consideration of Petitioner's arguments, transcripts of the change of plea hearing and sentencing proceedings, and the reports generated by Drs. Dattilio and Silverman, the Court is unable to conclude that by providing Dr. Silverman with a copy of the Dattilio Report, Plea Counsel made an error so serious that his representation violated Plaintiff's Sixth Amendment right to counsel.  Even assuming Petitioner could establish deficient representation under the first Strickland prong, the Court finds that he has failed to establish the requisite showing of prejudice under the second Strickland prong.

Concerning the first Strickland prong, while Petitioner characterizes the Dattilio Report as "unfavorable," the Report is not only largely consistent with but also supports Dr. Silverman's testimony.  Dr. Silverman testified that he and Dr. Dattilio agreed that Petitioner exhibited late-life pedophilic behavior notwithstanding Dr. Silverman's opinion that Petitioner is not a pedophile.  (Doc. No. 82 at 35.)  Dr. Dattilio concluded that Petitioner suffers from a mental

---

[4] Rule 16(b)(1)(B)(ii) provides that, if a defendant requests disclosure under Rule 16(a)(1)(F) "and the [G]overnment complies," the "defendant must furnish the Government with any reports of examinations or tests if "the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony."  See Fed. R. Crim. P. 16(b)(1)(B)(ii).

abnormality indicating pedophilic behavior, which aligns with Dr. Silverman's opinion. Indeed, Dr. Silverman drew upon the Dattilio Report—namely, Dr. Dattilio's "very detailed" personal history of Petitioner—to form his conclusion that Petitioner developed pedophilic behavior later in life. (Id. at 34.) Dr. Silverman also testified that he agreed with Dr. Dattilio's determination that Petitioner was, prior to exhibiting pedophilic behavior, a "heterosexual in a normal, normative fashion." (Id. at 36.) Consistent with Dr. Silverman's findings, Dr. Dattilio further opined that Petitioner may have been laboring under an undiagnosed disorder giving rise to grandiose impulsive behaviors including pedophilic behavior. Because the doctors' opinions are consistent in many regards, it cannot be said that Plea Counsel provided an "unfavorable" report to Dr. Silverman before sentencing.

Further undercutting Petitioner's arguments is the fact that they rest on the assumption that a reasonable attorney would have anticipated Dr. Silverman's opinion that Petitioner's pedophilic behavior is not a symptom of "pedophilia" as defined in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"). To anticipate that opinion, Plea Counsel would have been required to predict Dr. Silverman's disagreement with the DSM-5's definition of pedophilia, which, according to Dr. Silverman, does not adequately address his view that "you could have pedophilic behavior without being a pedophile." (Doc. No. 82 at 32.) The likelihood that Plea Counsel would have anticipated that disagreement is made further improbable by Dr. Silverman's observation that issues of pedophilic behavior present a rather "confusing area" of psychiatry. (Doc. No. 82 at 37.) Thus, the Court is unable to conclude that Plea Counsel's representation fell below an objective standard of reasonableness under prevailing norms.

In any event, Petitioner has failed to demonstrate that Plea Counsel's conduct prejudiced him under the second Strickland prong. In this regard, the Court notes that its skepticism about

14

Dr. Silverman's opinions stemmed not from the Government's references to the Dattilio Report on cross-examination but rather from Dr. Silverman's inherently unpersuasive testimony. Dr. Silverman opined that Petitioner suffers from a disorder not recognized in the DSM-5, and he formed that opinion on particularly tentative bases, including: (1) Petitioner's representation that he had never before experienced any pedophilic impulses, which Dr. Silverman took to mean that Petitioner's pedophilic behavior could only be explained by brain disease, brain damage, or brain disorder (id. at 35, 44); (2) an MRI scan of Petitioner that "show[ed] something . . . equivocal" but not a brain tumor (id. at 48); (3) Petitioner's sleep apnea, which "might have" caused brain dysfunction (id.); (4) the opinion that Petitioner's "history and examination show[ed] dementia" despite no display of the "usual signs of dementia" (id. at 51); and (5) Petitioner's diabetes, hypothyroidism, panic disorder, history of substance abuse, and attention deficit disorder, which Dr. Silverman testified "can be a contributing factor to various problems" (id. at 27). The Court's view of Dr. Silverman's testimony was guided by the lack of persuasiveness of his own opinions, and it cannot be said that if the Dattilio Report was never disclosed, the proceedings would have been any different. Accordingly, the Court concludes that Petitioner has not demonstrated an entitlement to relief on Ground Four of his motion.

### E. Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion. The decision to hold a hearing is wholly within the discretion of the district court. See Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Gov't of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985). Here, as discussed above, the Court finds that "the motion and files and records of this case show

conclusively that the movant is not entitled to relief." See United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Forte, 865 F.2d at 62). Accordingly, the Court finds no reason to hold an evidentiary hearing in this matter.

### F. Certificate of Appealability

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. A court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, the Court will not issue a COA.

### IV. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No. 85) without an evidentiary hearing and will not issue a COA. An appropriate Order follows.